UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARICO INVESTMENTS, INC. | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION H-03-5532 |
| | § | |
| THE TEXAS ALCOHOLIC BEVERAGE | § | |
| COMMISSION, *et al.*, | § | |
| *Defendants.* | § | |

OPINION ON SUMMARY JUDGMENT

Before the court are the parties' cross-motions for summary judgment. The plaintiff Carico Investments, Inc.[1] has filed a second motion for summary judgment (Dkt. 48). The defendants are the Texas Alcoholic Beverage Commission and certain Commission officials sued in their official capacity, Alan Steen (Executive Director of the TABC), and Michael Burnett and Craig Schmidt (agents of the TABC) (collectively "TABC"). The TABC has filed a supplemental brief for summary judgment which will be treated as TABC's second motion for summary judgment (Dkt. 49). A hearing was held on the motions July 13, 2006. For the reasons that follow, the court grants Carico's motion in part, and denies the TABC's motion in its entirety.

Carico challenges the constitutionality of Texas Alcoholic Beverage Code sections 11.61(b)(7), 61.71(a)(17), and 101.64, as well as TABC Administrative Rule section 35.31 (16 TEX. ADMIN. CODE § 35.31 (2006)). Carico seeks a declaratory judgment that sections 11.61(b)(7), 61.71(a)(17), and 101.64 of the Texas Alcoholic Beverage Code are unconstitutional as written under the First, Fourth, and Fourteenth Amendments of the United States Constitution, and that these same provisions, along with rule 35.31(c)(12) of the Texas Alcoholic Beverage Code, are unconstitutional

---

[1] Carico Investments, Inc. also does business under the names "Carico Distributing Company" and "Carico Distributing Company, USA." *See* Dkt. 48, Ex. A.

as applied by the TABC.  Carico also seeks a permanent injunction against the TABC from enforcing these provisions.  An allegation of the denial of rights guaranteed under specific constitutional provisions raises a question appropriate for review under the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See, e.g., Block v. Thompson*, 472 F.2d 587, 588-89 (5th Cir. 1973) (per curiam); *Parks v. Allen*, 409 F.2d 210, 210-11 (5th Cir. 1969) (per curiam); *Barnes v. Merritt*, 376 F.2d 8, 8-12 (5th Cir. 1967).

## FACTUAL BACKGROUND

Carico is a distributor of adult magazines, videos, and DVDs.  Carico offered these items for sale on consignment through retail vendors licensed by the TABC, such as convenience stores and truck stops, giving a percentage of the sale proceeds to the retailer/consignee.  The magazines were packaged in bundles of two or more, with the covers mostly obscured.  Carico alleges that for several years the TABC conducted "illegal seizures of Plaintiff's magazines, causing actual or *de facto* interference with Plaintiff's customers, and/or imposing a prior restraint on the promotion and exhibition of expressive material protected by the First and Fourteenth Amendments of the United States Constitution."[2]  Carico further maintains the TABC intimidated retailers from continuing to carry Carico's products by threatening suspension or non-renewal of their alcohol licenses.

The TABC agents deemed magazines, videotapes, or DVDs obscene if they depicted scenes of oral, vaginal, or anal penetration, either on the cover or within the materials.[3]  TABC agents

---

[2]    Dkt. 48.

[3]    Testifying as TABC's designated representative under Federal Rule of Civil Procedure 30(b)(6), James Samuel Smelser, Chief of Enforcement of the TABC, explained that "[b]asically the instructions [to the field agents] are that if it depicts penetration, then that's the standard that you find in the penal code that we use to inform the clerks that it falls under place and manner of operation as being obscene."  Lou Bright, General Counsel for the TABC, wrote a memorandum on November 8, 2001 advising the agency on the legal definition of obscenity.  He posited that, "It is my judgment that pictures of people engaged in sexual activity,

inspected establishments licensed by the TABC, and if such materials were found, they would generally issue an administrative warning to the retailer that the possession of the materials violated the Alcoholic Beverage Code.  If the TABC found these materials a second time, it would institute administrative action against the vendor to suspend its license.   The following incidents are documented in TABC reports:

1.    On March 30, 2002, TABC agent Tricia L. O'Cayce seized approximately 120 bundles of magazines from the Quickie Pickie in Austin, Texas, and prepared an administrative case against the store for possession of pornographic material.[4]

2.    On January 23, 2003, TABC agent Brian D. Bowers initiated an administrative action against SNS Food Store in Clute, Texas.  Bowers inspected magazines behind the service counter and determined many were in violation of the Alcoholic Beverage Code.  He seized approximately 38, all the adult magazines in the store, save copies of Playboy and Playgirl.[5]

3.    On May 7, 2003, TABC agent Craig Schmidt entered Bestco Food Mart in Spring, Texas, and seized an adult videotape.  The video box cover, displayed in an open area, showed three penises and three topless women.  Schmidt cited the store for violating sections 11.61 and 101.64 of the Alcoholic Beverage Code.[6]

4.    On June 3, 2003, Craig Schmidt and Wayne Pool, agents of the TABC, entered Handi Stop No. 67 in Harris County, Texas.  The agents seized 16 VHS cassettes and 24 DVDs.  The agents placed the store on administrative notice that the display of these items violated sections 11.61 and 101.64 of the Alcoholic Beverage Code.[7]

---

and further showing contact or penetration of the mouth, genitals or anus of one person by or with the genitals of another, present sufficient evidence of an obscene character as to support a charge under Chapter 43 [of the Texas Penal Code]."  Dkt. 48, Ex. B.

[4]    Dkt. 30, Ex. A.

[5]    Dkt. 48, Ex. A.

[6]    Dkt. 30, Ex. A.

[7]    Dkt. 48, Ex. A.

5.      On September 13, 2003, agent T.G. Chadwick entered the premises of a retailer located at a truck stop in Hempstead, Texas.  Chadwick seized 90 tapes and issued an administrative notice for possession of indecent graphic material.[8]

6.      On January 31, 2004, Brent E. Roberts and another TABC agent inspected American Newstand No. 1 in Fort Worth, Texas.  Roberts had previously warned the owner that "it was not permissible for him to possess, display, sell, or distribute in any manner ANY material(s) that were Lewd Graphic or Indecent in nature."   These agents seized at least three "XXX-rated magazines" and a number of VHS tapes and DVDs.  Roberts issued an administrative warning and recommended that the store's permit be suspended pursuant to section 11.61(b)(7).[9]

At some point after these seizures, an unspecified portion of the magazines and movies were destroyed by the TABC.  None of the remaining materials has been returned to Carico.

The TABC makes no claim that any of these seizures were pursuant to a warrant issued by a neutral magistrate or that there was a prior judicial determination that any of the seized materials were obscene.  No judicial determination the seized materials were obscene has ever since been made. In his deposition, James Samuel Smelser, Chief of Enforcement of the TABC, admitted that there were no procedures to determine if the materials seized were in fact obscene beyond the determination of the individual TABC agent.[10]  Furthermore, Smelser testified that he believed the TABC was authorized by statute to seize not just obscene but also indecent material, and that the TABC had the authority to prevent the sale of any indecent material on premises licensed by the TABC.[11]

---

[8]      Dkt. 48, Ex. A.

[9]      Dkt. 48, Ex. A.

[10]      Smelser was asked, "are there any procedures . . . to attain judicial review of material to determine if it's obscene?"  He responded, "No, sir."  Dkt. 48, Ex. B, p. 11.

[11]      *See* Dkt. 48, Ex. B, p. 15, 19-20.

The TABC relies upon its general police power to regulate alcohol as granting it the authority to confiscate indecent and obscene materials on those retail premises it licenses.  If a licensee or permittee challenges whether in fact the seized materials are obscene, they are referred to a State Administrative Law Judge for a hearing conducted approximately six to eight months later.[12]

Texas enacted the Alcoholic Beverage Code and created the TABC under its police power "for the protection of the welfare, health, peace, temperance, and safety of the people of the state." TEX. ALCO. BEV. CODE ANN. § 1.03 (Vernon 1995).  The TABC is charged by state law to "inspect, supervise, and regulate every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, advertising, labeling, and distributing alcoholic beverages, and the possession of alcoholic beverages for the purpose of sale and otherwise." *Id.* at § 5.31.  Texas law further provides that "[t]he commission shall supervise and regulate licensees and permittees and their places of business in matters affecting the public." *Id.* at § 5.33.[13]

Section 101.64 of the Alcoholic Beverage Code deals with "Indecent Graphic Material."  It states that, "No holder of a license or permit may possess or display on the licensed premises a card, calendar, placard, picture, or handbill that is immoral, indecent, lewd, or profane."  In sections 11.61 and 61.71 of the Alcoholic Beverage Code, the Texas state legislature grants the TABC authority to cancel or suspend licenses or permits for various infractions.  Section 11.61(b) provides that

> The commission or administrator may suspend for not more than 60 days or cancel an original or renewal permit if it is found, after notice and hearing, that any of the following is true: . . . (2) the permittee violated a provision of this code or a rule of the commission  . . . [or] (7) the place or manner in which the permittee conducts his

---

[12]     *See* Dkt. 48, Ex. B, p. 12.

[13]     "Licensees" are authorized to sell only beer; "permittees" may sell other alcoholic beverages.  *See* Dkt. 48, Ex. B.

> business warrants the cancellation or suspension of the permit based on the general welfare, health, peace, morals, and safety of the people and on the public sense of decency . . . .

Tex. Alco. Bev. Code Ann. § 11.61(b) (Vernon 1995).  Section 61.71(a) is largely similar:

> The commission or administrator may suspend for not more than 60 days or cancel an original or renewal retail dealer's on- or off-premise license if it is found, after notice and hearing, that the licensee: (1) violated a provision of this code or a rule of the commission during the existence of the license sought to be cancelled or suspended or during the immediately preceding license period . . . [or] (17) conducted his business in a place or manner which warrants the cancellation or suspension of the license based on the general welfare, health, peace, morals, safety, and sense of decency of the people . . . .

Id. at § 61.71(a).

The TABC has promulgated regulations meant to carry out these statutory mandates.  Of present concern are those regulations in Title 16 of the Texas Administrative Code, section 35.31, which relate "to §§ 11.46(a)(8), 11.61(b)(7), 61.42(a)(3) and 61.71(a)(17) of the Alcoholic Beverage Code."  16 Tex. Admin. Code § 35.31 (2006).  This section declares that, "A licensee or permittee violates the provisions of the Alcoholic Beverage Code . . . if any of the offenses listed in paragraph (c) of this rule are committed."  Id. at § 35.31(b).  Paragraph (c)(12) covers "any public indecency offense described in Chapter 43 of the Texas Penal Code."  Id. at § 35.31(c)(12).  Chapter 43 of the Texas Penal Code states, "A person commits an offense if, knowing its content and character, he: (1) promotes or possesses with intent to promote any obscene material . . . ."  Tex. Penal Code Ann. § 43.23(c)(1) (Vernon 2003).

6

PROCEDURAL BACKGROUND

After this suit was instituted, the parties agreed to a temporary injunction of the TABC's enforcement of these provisions.  This agreed temporary injunction was entered by the court on February 13, 2004.[14]

The TABC has at points in this litigation called into question Carico's standing to challenge these statutes and this regulation.  This court, however, has previously held that Carico does have standing, and although the TABC did not contest this in its supplemental brief for summary judgment, during oral argument it also did not concede Carico's standing.  There is little doubt, though, about Carico's standing.  *See, e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (publishers had standing to challenge constitutionality of regulation even though regulation was purportedly aimed only at distributors).  Carico's property has been seized by the TABC, and some of it destroyed.  Carico has a financial interest in the adult materials it placed on consignment with retail vendors.[15]  Carico alleges that its ability to sell its material has been unlawfully interfered with as a result of unconstitutional state action.  The TABC's reticence in acknowledging Carico's standing is accordingly unfounded.

Both parties now seek summary judgment under Federal Rule of Civil Procedure 56(c).  Unlike many summary judgment motions, the facts in this case are not disputed, and the parties agree the matter is appropriately resolved as a matter of law on the stipulated summary judgment record.[16]  Nevertheless, given the court's ultimate holding in favor of Carico, to the extent that any inferences

---

[14]    *See* Dkt. 19.

[15]    *See* Dkt. 48, Ex. A.

[16]    *See* Dkt. 58.

7

from the facts are drawn, it will be done in the TABC's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

ANALYSIS

**1.     *Burford* Abstention**

As an initial matter, the defendants urge dismissal of Carico's challenge by invoking the *Burford* abstention doctrine.  *See Burford v. Sun Oil Co.*, 319 U.S 315 (1943).  The *Burford* doctrine is concerned with protecting complex state administrative processes from undue federal interference and allows a federal court to abstain from exercising its jurisdiction in deference to such procedures. *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 362 (1989); *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 700 (5th Cir. 1999).  It does not, however, require abstention in every case where there are such procedures.  *New Orleans Pub. Serv.*, 491 U.S. at 362. Because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).  "[T]here is . . . no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy."  *Zablocki v. Redhail*, 434 U.S. 374, 380 n.5 (1978).  In addition, courts have noted that *Burford* abstention is the least well-defined, and most difficult to apply, of the various types of abstention doctrines.  *See, e.g., Construction Aggregates Corp. v. Rivera de Vicenty*, 573 F.2d 86, 89-90 (1st Cir. 1978); *Bally Mfg. Corp. v. Casino Control Comm'n of New Jersey*, 534 F. Supp. 1213, 1221 (D.N.J. 1982).

8

There are several factors relevant to determining whether *Burford* abstention is appropriate: (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in the area; and (5) the presence of a special state forum for judicial review. *See Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993).

Here the predominant issues are federal First and Fourth Amendment challenges to provisions of the Alcoholic Beverage Code and TABC regulations, and the TABC's enforcement of the same. The TABC asserts that this case would require inquiry into unsettled issues of state law, but offers no explanation of how this is so. Moreover, at the motion hearing the TABC was understandably reluctant to press these issues as "unsettled" as this would necessarily raise questions of vagueness. Thus, there is little showing that *Burford* abstention is warranted.

This conclusion is bolstered by *Vintage Imports, Ltd. v. Joseph E. Seagram & Sons, Inc.*, 409 F. Supp. 497, 507-08 (E.D. Va. 1976). The *Vintage Imports* court held that *Burford* abstention was unwarranted, noting that "the Court is not compelled to examine an intricate state policy [concerning the revocation of liquor licenses] but the Court must ascertain facially whether the statute meets constitutional muster." *Id.* at 508. Likewise, this court's examination is limited to facial and as applied challenges under First and Fourth Amendment principles; the court is not weighing in upon a complex and unsettled administrative regime.

## 2.    Challenge of the TABC's Application of the Statutes and Regulation

Carico challenges the statutes and regulation as applied by the TABC and the statutes as written. First, the "as applied" challenge. The court is compelled to conclude that the TABC's large-

scale seizure of numerous magazines, VHS tapes, and DVDs did in fact violate the protections of the First, Fourth, and Fourteenth Amendments.[17]  *See, e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S. Ct. 916, 928 (1989); *Roaden v. Kentucky*, 413 U.S. 496, 502-04 (1973); *A Quantity of Copies of Books v. State of Kansas*, 378 U.S. 205, 210-11 (1964); *Marcus v. Search Warrants of Property at 104 East Tenth St.*, 367 U.S. 717, 735-36 (1961).  Under the auspices of the Twenty-First Amendment states have great discretion under their police powers to regulate the sale of alcohol.  *See California v. LaRue*, 409 U.S. 109, 115 (1972); *Davidson v. City of Clinton*, 826 F.2d 1430, 1433 (5th Cir. 1987).  Nevertheless, state regulatory provisions controlling liquor distributions pursuant to the Twenty-First Amendment are not immunized from scrutiny under other constitutional provisions.  *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996) ("the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment"); *LaRue*, 409 U.S. at 115.  For instance, the Fourteenth Amendment requires states to follow procedural safeguards to insure against the curtailment of constitutionally protected expression.  *See, e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 65-66 (1963).  These safeguards apply to regulations associated with retail liquor licenses.  *See generally Block v. Thompson*, 472 F.2d 587 (5th Cir. 1973) (per curiam); *Hornsby v. Allen*, 326 F.2d 605, 609-10 (5th Cir. 1964).

One of these procedural safeguards is that before the seizure of a large quantity of materials such as books or movies occurs, the Constitution requires a prior adversarial hearing "designed to focus searchingly on the question of obscenity."  *Marcus*, 367 U.S. at 732; *see also Fort Wayne*

---

[17]     The First Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment.  *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996).

*Books*, 109 S. Ct. at 927 ("rigorous procedural safeguards must be employed before expressive materials can be seized as 'obscene.'"); *A Quantity of Copies of Books*, 378 U.S. at 210-11; *United States v. Jenkins*, 974 F.2d 32, 35 (5th Cir. 1992) ("It is . . . well-settled that the government may not seize presumptively protected expressive materials without a prior judicial determination of obscenity").

While a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, large-scale confiscations of books and films based on obscenity are invalid without a judicial determination of the obscenity issues in an adversarial proceeding. *See Fort Wayne Books*, 109 S. Ct. at 927; *Heller v. New York*, 413 U.S. 483, 491-92 (1973); *A Quantity of Copies of Books*, 378 U.S. at 210-12 (finding a massive seizure of books unconstitutional because there was no adversarial hearing prior to the seizure). This is in contrast with the general rule under the Fourth Amendment that any and all contraband, instrumentalities, or evidence of a crime may be seized upon probable cause, even without a warrant in certain circumstances. *See Fort Wayne Books*, 109 S. Ct. at 928; *see also Roaden v. Kentucky*, 413 U.S. 496, 502 (1973) (the seizure of instruments of a crime is to be distinguished from the seizure of a quantity of books and movie films in appraising the reasonableness of the seizure). Special Fourth Amendment protections are afforded for searches and seizures of First Amendment materials. *Fort Wayne Books*, 109 S. Ct. at 928.

The TABC may not simply designate materials "obscene," and then proceed from that untested premise. The law demands a judicial determination that this designation is accurate—its does not allow the executive branch to simply affix this label, and once attached, ignore the requirement for any further proof or process. *Cf. Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1359 (5th Cir. 1980) (there must some judicial determination of obscenity before a seizure may occur). While what is

11

obscene and what is not may have been self-evident to Justice Potter Stewart, a similar omniscience is not imputed to prosecutors and administrative agents.  *Cf. Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

The TABC attempts to deflect the Fourth Amendment issue.  The TABC argues there is no Fourth Amendment issue because there is no reasonable expectation of privacy at TABC licensed premises.  This is undoubtedly true, but irrelevant.  The Fourth Amendment issue here is unreasonable seizures, not unreasonable searches.

The TABC admits that no procedure beyond the subjective determination of individual TABC officers was used in seizing otherwise presumptively protected materials.  *Cf. Universal Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978) (en banc), *aff'd*, 445 U.S. 308 (1980) (concluding Texas statute was constitutionally infirm because of its inadequate process for ascertaining whether materials were obscene).  It attempts to bypass the issue by arguing that obscene materials are not protected and therefore may be confiscated.  But this assumes the very premise (obscenity) that is required to be proven.  *Cf. A Quantity of Copies of Books v. Kansas*, 378 U.S. 205, 211 (1964) ("It is no answer to say that obscene books are contraband . . . .").  The law neither allows this presumption, nor does it allow seizures solely on the judgment of TABC agents that the magazines or movies were obscene.  *See Roaden v. Kentucky*, 413 U.S. 496, 506 (1973) (citations omitted) ("The seizure proceeded solely on a police officer's conclusions that the film was obscene; there was no warrant.  Nothing prior to seizure afforded a magistrate an opportunity to 'focus searchingly on the question of obscenity'").  There is no question that the TABC actions failed to comport with the procedural safeguards mandated by a clear line of Supreme Court precedent.

12

The second constitutional problem with the TABC's large scale confiscations is that they constituted a prior restraint. The seizure of all books in a bookstore, without a valid warrant, is a form of prior restraint, and is unreasonable under Fourth Amendment standards. *Id.* at 504. Likewise, the TABC's large-scale seizures of numerous magazines, VHS tapes, and DVDs without a valid warrant subjected Carico to a system of prior restraint in violation of the Constitution. *Cf. Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1362 (5th Cir. 1980) (seizing every magazine in Fulton County, Georgia without warrants and without the issue of obscenity ever being examined by a neutral, detached magistrate amounted to informal system of prior restraints). And it is obvious that a restraint has occurred here even if indirectly through harassing visits to retailers rather than imposed upon Carico directly. *Id.* at 1361.

While not unconstitutional *per se*, there is a heavy presumption against the constitutionality of a prior restraint. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Universal Amusement Co.*, 587 F.2d at 165. A prior restraint on speech runs afoul of the First Amendment if it lacks the following procedural safeguards: (1) the burden must be upon the censor to institute judicial proceedings and prove the material is unprotected; (2) any restraint prior to judicial review may be imposed only for a specified brief period and only for the purpose of preserving the status quo; and (3) a prompt final judicial determination must be assured. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560 (1975). Here there was not even a cursory nod to complying with such safeguards.

The TABC suggests that these concerns are not constitutionally problematic because it was exercising administrative power rather than pursuing criminal prosecutions. It also points out that permits issued under the Alcoholic Beverage Code are a purely personal privilege, and that licensees

13

and permittees voluntarily subject themselves to an extensive regulatory regime. *Cf.* TEX. ALCO. BEV. CODE ANN. § 11.03 (Vernon 1995). This distinction between administrative regulation versus criminal prosecution as the basis for greater governmental leeway in imposing prior restraints is not persuasive, and has been rejected by both the Supreme Court and the Fifth Circuit. *See, e.g., Blount v. Rizzi*, 400 U.S. 410, 417-22 (1971) (postmaster general's administrative scheme of censoring mail found by postal staff to be obscene held unconstitutional); *Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965) (holding that administrative bodies such as licensing boards and film commissions must adhere to strict procedural safeguards before prohibiting obscene materials); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 169-72 (5th Cir. 1978) (holding a civil nuisance statute constituted improper prior restraint). And this is not the first time the TABC's reliance on this distinction has been found unavailing. *See Texas Alcoholic Bev. Comm'n v. Wishnow*, 704 S.W.2d 425, 426-27 (Tex. Civ. App.—Houston [14th Dist.] 1985, no writ) (rejecting the argument that vagueness was less problematic where alcohol permits were cancelled pursuant to an administrative process rather than a criminal prosecution). Furthermore, "[m]erely calling a liquor license a privilege does not free the municipal authorities from the due process requirements in licensing and allow them to exercise an uncontrolled discretion." *Hornsby v. Allen*, 326 F.2d 605, 609 (5th Cir. 1964).

14

It is not disputed that a state has the power to prevent distribution of obscene matter.[18]  *See Smith v. California*, 361 U.S. 147, 152 (1959).  But again, the Fourteenth Amendment requires that the regulation of obscenity conform to rigorous procedural safeguards to prevent the curtailment of constitutionally protected expression.  *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66 (1963).  These safeguards were wholly absent in the TABC's enforcement actions.

A similar enforcement issue was addressed in *Peto v. Cook*, 364 F. Supp. 1 (S.D. Ohio 1973), concerning an Ohio alcohol regulation.  Regulation LCC-1-52, promulgated by the Ohio Department of Liquor Control, stated that:

> No permit holder, his agent or employee, shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances; lewd, immoral activities or brawls; or any indecent, profane, or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

---

[18]     Material may be found obscene if (1) the average person would find the work, taken as a whole, appeals to the prurient interest; (2) the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) the work, taken as whole, lacks serious literary, artistic, political, or scientific value.  *See Ashcroft v. ACLU*, 535 U.S. 564, 574-75 (2002); *Pope v. Illinois*, 481 U.S. 497, 500-01 (1987); *Miller v. California*, 413 U.S. 15, 24-25 (1973).  Texas Penal Code section 43.21 defines "obscene" largely on these criteria.  Under Texas law, "obscene" means material or a performance that:

(A)     the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B)     depicts or describes:

> (i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or
> (ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C)     taken as a whole, lacks serious literary, artistic, political, and scientific value.

TEX. PENAL CODE ANN. § 43.21(a) (Vernon 2003).

*Id.* at 3 n.5.  The *Peto* court noted that the Ohio Department of Liquor Control had some role in regulating obscenity, consistent with *California v. LaRue*, 409 U.S. 109 (1972).  *Peto*, 364 F. Supp. at 4.  The court held, however, that to the extent that

> the Department through Regulation LCC-1-52 attempts to exceed permissible standards of regulation over materials which are arguably protected by the First Amendment, as by taking administrative action against its licensees who possess printed matter which has not been previously found to be obscene at an adversary hearing before a competent judicial tribunal, it is unconstitutional and will be enjoined.

*Id.*  The *LaRue* decision upheld regulations promulgated by the California Department of Alcoholic Beverage Control forbidding sexually explicit live entertainment or films in licensed bars and night clubs, but the *Peto* court explained that

> as the form [of] the expression changes from public acts to the printed page, the State's regulatory powers under the Twenty-first Amendment suffer a corresponding diminishment, and the individual protections guaranteed by the First Amendment, and especially those which prohibit prior restraints, are of increasing significance.

*Peto*, 364 F. Supp. at 3.

Like its Ohio counterpart in *Peto*, the court finds that the TABC, in seizing large numbers of Carico's magazines and movies without a warrant and without any determination of obscenity by a neutral, detached magistrate, has applied sections 11.61(b)(7), 61.71(a)(17), and 101.64 of the Texas Alcoholic Beverage Code, and Administrative Rule section 35.31 (16 TEX. ADMIN. CODE § 35.31 (2006)) in an unconstitutional manner.  Carico's request for a permanent injunction is therefore appropriate.

3.      **Facial Challenge to the Statutes and Regulation**

   a.      **Texas Alcoholic Beverage Code § 101.64.**

Carico challenges the constitutionality of section 101.64 of the Alcoholic Beverage Code as both impermissibly vague and as overly-broad under the First Amendment. Section 101.64 states that "No holder of a license or permit may possess or display on the licensed premises a card, calendar, placard, picture, or handbill that is immoral, indecent, lewd, or profane." TEX. ALCO. BEV. CODE ANN. § 101.64 (Vernon 1995). The TABC counters that the court need not decide the constitutionality of section 101.64 because it is immaterial under the summary judgment facts. It is clear, however, that TABC agents relied upon section 101.64 as grounds for their administrative actions, as it was repeatedly cited as legal authority in the violation reports issued to licensees and permittees. Moreover, Chief of Enforcement Smelser also stated that he believed the TABC had the authority to prevent the sale of any indecent, in addition to obscene, material on premises that sell alcoholic beverages. While TABC Administrative Rule 35.31(c)(12) covers any public indecency offense listed in Chapter 43 of the Texas Penal Code, the Penal Code itself is necessarily limited to materials that are obscene. *See* TEX. PENAL CODE ANN. § 43.21(a) (Vernon 2003); *see also Miller v. California*, 413 U.S. 15 (1973). It does not, nor could it, forbid possession of indecent material. The authority to ban "indecent" material is therefore only found in section 101.64 of the Alcoholic Beverage Code. With this in mind, the court is compelled to examine the constitutionality of this particular statute.

In assessing whether a statute fails to comport with First Amendment guarantees, the court must first determine the level of scrutiny to which the statute is subject. The TABC frames the analysis generally in terms of "time, place, and manner" and would presumably have the court review

this law under standards associated with those types of ordinances.  The statute, however, does not merely regulate actions or conduct associated with speech, it regulates expression itself.  Section 101.64 forbids the possession or display of given categories of content—those that are "immoral, indecent, lewd, or profane."  Hence the statute is more properly viewed as a content-based regulation rather than a "time, place, or manner" ordinance.  Content-based restrictions on speech are not analyzed as a form of time, place, and manner regulation; they are subject to a more exacting level of scrutiny.  *See Reno v. ACLU*, 521 U.S. 844, 868 (1997).  If a regulation is related to the suppression of expression based on content, or was enacted to restrict certain viewpoints or modes of expression, it is presumptively invalid, and will pass constitutional scrutiny only if it is shown that the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.  *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002); *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991); *Texas v. Johnson*, 491 U.S. 397, 403, 411-12 (1989).

A statute is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ."  *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).  Statutes and regulations must be reasonably certain to avoid vagueness that might otherwise induce individuals to forgo First Amendment rights for fear of violating an unclear law.  *See Scull v. Commonwealth of Virginia*, 359 U.S. 344, 353 (1959).  Therefore, a law must be narrowly drawn when First Amendment rights are implicated to prevent the undue constraint of such rights under the guise of regulating conduct by police power.  *See Ashton v. Kentucky*, 384 U.S. 195, 200-01 (1966).  Otherwise, there is the risk that a vague law will cause individuals to "'steer far wider of the

unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

A statute is overly-broad under the First Amendment if the terms of the challenged statute are broad enough to suppress protected speech. *Gooding v. Wilson*, 405 U.S. 518, 522 (1972). The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial judged in relation to the statute's legitimate sweep. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973)). To attack a statute on overbreadth grounds, a plaintiff must show either that every application of the statute creates an impermissible risk of the suppression of ideas, or that the statute is "substantially" overbroad, meaning there is a realistic danger that the statute itself will significantly compromise First Amendment protections of third parties. *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988); *City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797-99 (1984).

Section 101.64 is not narrowly drawn. It cuts a wide and broad swath across territory covered by the First Amendment, and proscribes the possession and display of presumptively protected materials. While perhaps not enjoying a favored or central place on the First Amendment landscape, erotic adult magazines and movies that are not obscene are nevertheless still protected. *See Woodall v. City of El Paso*, 49 F.3d 1120, 1122 (5th Cir. 1995) ("Erotic non-obscene printed matter [and] films . . . are sheltered by the First Amendment, but enjoy less protection than some other forms of speech, such as political speech"); *TK's Video v. Denton County*, 24 F.3d 705, 707 (5th Cir. 1994) (First Amendment protects sexually explicit speech and films); *see also Sable Commc'ns of California, Inc.*

*v. F.C.C.*, 492 U.S. 115, 126 (1989) (sexual expression which is indecent but not obscene is protected by the First Amendment).

A state may regulate the content of constitutionally protected speech that is not obscene in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. *Sable*, 492 U.S. at 126; *F.C.C. v. Pacifica Found.*, 438 U.S. 726 (1978).  For instance, a state may have a compelling interest in protecting minors from literature that is not obscene by adult standards. *Sable*, 492 U.S. at 126.  Nonetheless, to withstand constitutional scrutiny, the state "'must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.'" *Id*. (citations omitted).   The necessity of narrowness was emphasized by the *Sable* Court in its interpretation of *F.C.C. v. Pacifica Foundation*.  The Court noted in that case that special treatment of indecent broadcasting was justifiable because it did not involve an absolute ban on indecency, it merely sought to channel it to times of the day when children were least likely to be exposed; and the Court distinguished unwilling listeners who might unexpectedly come across an indecent outburst on the radio from those who take affirmative steps to receive a communication and are willing to pay for the communication. *Sable Commc'ns*, 492 U.S. 115, 127-28.

The State of Texas certainly has an interest, perhaps even a compelling interest, in regulating the sale of alcohol.  It undisputedly has the constitutional prerogative to do so under the Twenty-First Amendment.  It also has an interest in demanding that those who sell alcohol abide by any number of important protocols in the handling of intoxicating beverages.  But in section 101.64, the state has not narrowly tailored its intrusion upon the First Amendment rights of retailers and distributors.  Instead it has wholly forbidden the possession or display of "immoral, indecent, lewd, or profane" materials

20

by licensees and permittees.  Moreover, it has done so without articulating any compelling interest that this broad prohibition is meant to advance.

With respect to judging whether the statute is vague and overly-broad, the examination of other courts dealing with provisions similar to section 101.64 offers useful guidance.  The court in *Clark v. City of Fremont, Nebraska*, 377 F. Supp. 327, 335 (D. Neb. 1973), held that portions of the City of Fremont's ordinance providing grounds for the revocation and suspension of retail alcohol licenses were unconstitutionally vague.  It pointed to language allowing the City Council to revoke and suspend such licenses for the violation of "any statutory provision or ordinance of the City now existing or hereafter passed, enacted in the interests of good morals and decency . . . ." "or other crime or misdemeanor opposed to decency and morality."  *Id.* at 343.  The *Clark* court found that

> the grounds for revocation of liquor licenses are based upon words incapable of intelligible or precise meaning; that these provisions subject liquor licensees to possible arbitrary, and wholly discretionary, administrative decisions as to what constitutes a ground for revocation; and that they provide no ascertainable standards against which a liquor licensee could apply contemplated conduct.

*Id.* at 335.  The *Clark* court further explained:

> The Supreme Court, in balancing the states' broad regulatory power over liquor sales under the Twenty-first Amendment against the right of free expression under the First Amendment, has limited the area in which a state may, unrestricted by the First Amendment, regulate obscenity in liquor establishments to "certain types of live entertainment or movies . . . (which) 'partake more of gross sexuality than of communication'."

*Id.* at 341-42 (citing *Peto v. Cook*, 364 F. Supp. 1, 3 (S.D. Ohio 1973)).

Two Texas courts have found language in a statute similar to section 101.64 unconstitutionally vague.  Section 104.01 of the Alcoholic Beverage Code deals with "Lewd, Immoral, Indecent Conduct" and provides that "No person authorized to sell beer at retail . . . may engage in or permit

conduct on the premises of the retailer which is lewd, immoral, or offensive to public indecency, including, but not limited to, any of the following acts: . . . (6) permitting lewd or vulgar entertainment or acts." TEX. ALCO. BEV. CODE ANN. § 104.01 (Vernon 1995). In *Wishnow v. State*, 671 S.W.2d 515, 516-17 (Tex. Crim. App. 1984) (en banc), the court held that 104.01(6) was unconstitutionally vague because it failed to define the terms "lewd" and "vulgar," and also found the terms "immoral," "offensive to public decency," and "intoxicated" unconstitutionally vague as used in section 11.61(b)(7)(13) and (14). In *Texas Alcoholic Bev. Commission v. Wishnow*, 704 S.W.2d 425, 428 (Tex. Civ. App.—Houston [14th Dist.] 1985, no writ), the court likewise found that the prohibition against "lewd" or "vulgar" acts in section 104.01(6) unconstitutionally vague.

The TABC relies heavily on Supreme Court precedent allowing the regulation and even prohibition of alcohol on premises where nude dancing is involved. The TABC argues that "courts uphold the constitutionality of codes applied to bar the sale of alcoholic beverages where sexually explicit expression occurs, thus abridging that speech."[19] But this argument conflates the prohibition of sexually explicit live entertainment or films in licensed bars and night clubs where there is contemporaneous consumption of alcohol, with the sale of adult magazines and movies at convenience stores and truck stops where both the alcohol and the adult materials are "consumed" off-premises. There is a distinction for First Amendment purposes between adult businesses that sell books or videos solely for off-site entertainment and those providing on-site adult entertainment. *See, e.g., Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 295 (5th Cir. 2003); *H and A Land Corp. v. City of Kennedale*, 2005 WL 723690, at *8-*10 (N.D. Tex. 2005). As the Fifth Circuit has noted:

---

[19]     Dkt. 49.

> Off-site businesses differ from on-site ones, because it is only reasonable to assume that the former are less likely to create harmful secondary effects. If consumers of pornography cannot view the materials at the sexually oriented establishment, they are less likely to linger in the area and engage in public alcohol consumption and other undesirable activities.

*Encore Videos*, 330 F.3d at 295.

Although it is true that various ordinances limiting sexually oriented acts and entertainment at establishments offering alcoholic beverages for sale have been held constitutional and a valid exercise of general police powers, it is important to note that these ordinances were narrowly tailored regulations aimed at minimizing the secondary effects caused by alcohol consumption at adult entertainment establishments. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 291 (2000); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 722-24 (7th Cir. 2003). Alcohol is not generally consumed on the premises of convenience stores or truck stops, nor was there any live adult entertainment at the establishments investigated by the TABC in this case.

The TABC makes no argument that the statute is directed at curbing harmful secondary effects rather than regulating the content of speech.[20] The TABC seized adult materials based solely on content—depictions of sexual penetration. It does not contend that its actions were aimed at curbing secondary effects of the sale of adult materials at TABC licensed premises, nor has it identified any such problematic secondary effects that the Texas State Legislature has determined warrant redress.

The TABC maintains that sections 11.61 and 61.71 of the Alcoholic Beverage Code are tethered to "obscenity" as defined by the Penal Code, which effectively limits the otherwise broad language of those provisions. But no similar argument is put forward to link the terms "immoral,"

---

[20]    Harmful "secondary effects" may include crime, reduction of economic activity, and lowered property values. *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 291 (5th Cir. 2003).

23

"indecent," "lewd," or "profane" in section 101.64 to "obscenity" as either defined by the Penal Code or set forth by *Miller v. California*, 413 U.S. 15 (1973), and its progeny.  Indeed the statute does not define these terms or restrict their reach to obscene materials.  *Cf. Reno v. ACLU*, 521 U.S. 844, 871 (1997) (lack of definition of "indecent" undermined constitutionality of statute).  With these authorities in mind, it is clear that the terms "immoral, indecent, lewd, or profane" in the statute are both vague and overbroad.

      **b.**      **Sections 11.61(b)(7) and 61.71(a)(17) of the Texas Alcoholic Beverage Code**

Carico similarly challenges sections 11.61(b)(7) and 61.71(a)(17) of the Texas Alcoholic Beverage Code on First Amendment grounds.  Carico asserts that sections 11.61(b)(7) and 61.71(a)(17) are unconstitutionally vague, but all of the arguments it advances are based on the provisions being unconstitutional as applied by the TABC, rather than unconstitutional as written. Without a more definitive showing of how these two provisions are constitutionally deficient, the court will not entertain such a "vague" vagueness challenge.

**4.**      **Declaratory Judgment and Permanent Injunction**

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the court finds that section 101.64 of the Texas Alcoholic Beverage Code is unconstitutionally vague and overbroad.  *See generally Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176-180 (1803).

And as discussed above, the court further finds that a permanent injunction is warranted.  The TABC is permanently enjoined from enforcing Texas Alcoholic Beverage Code § 101.64, as it relates to the possession, rental, sale, or display of printed or recorded material, whether through the auspices of sections 11.61(b)(7) or 61.71(a)(17) of the Texas Alcoholic Beverage Code, or via Administrative

24

Rule section 35.31.  The TABC is further directed to produce a list of Carico's materials, itemizing those seized and those destroyed, and return the materials still in the agency's possession.

The standard for a permanent injunction is essentially the same as for a preliminary injunction. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (5th Cir. 2003).  To obtain a permanent injunction, a plaintiff must show: (1) actual success on the merits; (2) an irreparable injury if the injunction is not granted or an inadequate remedy at law to compensate for the injury; (3) injury to the plaintiff if the injunction is not granted outweighs the injury to the defendant if it is granted; and (4) the granting of the permanent injunction will not disserve the public interest.  *See eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006); *Amoco Prod.*, 480 U.S. at 546 n.12.

Carico has demonstrated actual success on the merits because the court has found that the TABC has unconstitutionally applied the statutes and regulation against it.  Second, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Millennium Rests. Group, Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 810 (N.D. Tex. 2002) ("when a case involves infringement of First Amendment rights, there is a strong presumption that the plaintiff will be irreparably injured if an injunction is not issued").  It follows that Carico would suffer irreparable injury if an injunction is not issued.  It further follows that an irreparable injury to Carico outweighs an injury to the TABC that is not immediately apparent.  Finally, the court finds that a permanent injunction will not disserve the public interest. Little elaboration is needed to recognize that the public has an important interest in seeing the procedural safeguards demanded by the First and Fourth Amendments implemented.

25

## Conclusion

Accordingly, Carico's motion for summary judgment is GRANTED in part; the Texas Alcoholic Beverage Commission's motion for summary judgment is DENIED in its entirety.

Signed on July 24, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge

26